BRUCE P. KITCHELL, RESPONDENT, v. JAMES E. CROSSLEY, RENA P. CROSSLEY AND CORNELIA V. PEDDIE, APPELLANTS.

Submitted March 26, 1917—Decided June 18, 1917.

Plaintiff, an architect, was employed to make plans and specifications for a new building. A dispute having arisen respecting the amount of his compensation, the parties agreed in writing that he should be paid $1,500 for said plans and specifications and supervising the construction of the building, $750 of which was payable upon the completion of the plans and specifications, $375 when the building was half completed, and the remainder upon completion. The $750 was paid upon the signing of the agreement but the defendants never proceeded to the construction of the building. *Held*, in a suit by the architect to recover for his services, that the written contract was controlling as to the rate of compensation and that the amount of same was to be determined according to the rule laid down in *Kehoe* v. *Rutherford*, 56 *N. J. L.* 23. *Stephen* v. *Camden and Phila. Soap Co.*, 75 *Id.* 648, distinguished.

---

On appeal from the Essex Circuit Court.

For the appellants, *Raymond, Mountain, Van Blarcom & Marsh.*

For the respondent, *Church & Harrison.*

The opinion of the court was delivered by

PARKER, J. The plaintiff's claim was for the "reasonable value" of his services as architect in drawing plans and specifications and receiving bids for a proposed new building which was never built according to such plans. Defendants undertook to meet this by setting up a written agreement signed by plaintiff and by James E. Crossley as defendants' agent, whereby plaintiff stipulated to draw the plans, &c., and supervise the erection of the building for $1,500, of which $750 was to be payable on completion of plans, $375 when building should be half completed, and the remainder on completion. Plaintiff attacked this as having been "abandoned" and claimed for what he had done at the architect's customary rate, as testified, of three-fifths of six per cent. on the estimated cost of the building, and had a verdict of $2,757.26 besides the $750 which had been paid to him at the time of executing the written agreement, or about $3,500 in all. He did nothing after receiving bids, though he was ready to perform all needed services, the defendants having refused to go on according to his plans and having employed another architect. The decision turns upon the rule to be applied touching the amount of recovery.

When plaintiff was first employed there was no specific agreement or understanding as to the rate of his compensation, and after the plans were substantially ready, he sent Mr. Crossley a bill for $2,520, for services up to that point. This, and later communications threatening suit, brought Crossley to his office, and there was some disputing about the amount of compensation, which resulted in the preparation, by plaintiff, of the following paper in the form of a letter or proposal on plaintiff's letter-head, and signed by him. Both parties agree that it was accepted by Crossley, and it is plain that his signature thereto was intended as such acceptance:

| Kitchell v. Crossley. | *90 N. J. L.* |
|---|---|

"NEWARK, N. J., October 27, 1914.

*Mr. J. E. Crossley, Newark, N. J.:*

DEAR SIR—I propose to make the plans, specifications and supervise the works on the new four-story and basement building on the corner of Market and Halsey streets, Newark, N. J., for the Peddie estate, for the sum of one thousand five hundred ($1,500) dollars. Seven hundred and fifty ($750) on completion of plans. Three hundred and seventy-five ($375) when building is half erected. Balance as work progresses.

Yours truly,

BRUCE P. KITCHELL.
J. E. CROSSLEY."

At the time this paper was signed by the plaintiff, on his own part, and by Crossley as representing the defendants, the plans and specifications had not been sent out to prospective bidders. The case shows that the $750 stipulated for was paid at the time the agreement was made, or almost immediately thereafter, and that plaintiff was instructed to get the bids. He did so, and, according to his testimony, Crossley never came to his office to consider the bids, and did nothing further in the matter. As a result, the plaintiff was not only not required to complete the work he had stipulated to do by this agreement, but was actually prevented from completing it by the action of the defendants.

At the trial it was claimed by the defendants that this agreement was a compromise and settlement of plaintiff's claim for what he had actually done, and a written agreement with respect to what he should be paid therefor, and that it was binding upon the plaintiff. The plaintiff's claim was that by reason of the failure of the defendants to go on with the building, he was not bound by the agreement either for what he had done or with respect to what he was to do. The trial judge left it to the jury to say, first, whether the written agreement was a settlement for the work that had been done by the architect up to that time; whether (to quote his language), when they signed that agreement, it was with an

understanding between the architect and Mr. Crossley that what work had been done up to that time was included in the sum of $1,500, which he was to receive, as well as the services which were afterwards to be performed by him, as the architect, in the construction of this building. He went on to say that if it was, a certain rule of law applied, and then stated the rule as laid down in *Kehoe* v. *Rutherford,* 56 *N. J. L.* 23, and *Wilson* v. *Borden,* 68 *Id.* 627; and under that rule limited the plaintiff's recovery to three-fifths of the total price of $1,500, stating that no claim, as he understood it, was made for profit on the work that still remained to be done by the plaintiff, and that there was no evidence of what the profit would be. He then further charged as follows:

"Now, gentlemen, on the other view of the case, if you should find that the agreement of October 27th was not in settlement of all the work that had been done prior to that time, then the architect, Mr. Kitchell, would be entitled to recover for his services, whatever they were worth up to that time, less the $750 which he received at that time."

This was followed by instructions as to the details of the amount recoverable under those circumstances.

Defendants' counsel requested a charge laying down the rule of *Kehoe* v. *Rutherford, supra,* in the language of that case, which was refused, and an exception noted, both to this refusal and to the portion of the charge permitting a recovery for the value of the services as above set forth.

We consider that there was error in the matters excepted to. There was no question but that the written agreement was made because of a dispute between the parties and for the purpose of settling that dispute. At that time plaintiff had rendered some services for which he was, perhaps, then entitled to compensation, but at an amount not agreed upon, and therefore uncertain. It was evidently the desire of both parties that the amount that he should be entitled to receive should be fixed and settled between them, with a view of avoiding further controversy, both as to services already rendered and as to such as the parties contemplated should be

rendered. If this agreement had. been made before the plaintiff performed any services, and after he had finished the plans and specifications the defendants had refused to go further, we think there can be no question but that the rule of Kehoe v. Rutherford would apply, and the damages recoverable on a breach, whereby plaintiff was prevented from performing in full, would be limited by that rule as applied to the contract price. The fact that the agreement was made after some work had been done, and a dispute had arisen, makes no difference in the result, except that the additional element is introduced, of a compromise and settlement of the dispute, the legal consideration of which cannot be successfully challenged. McCoy v. Milbury, 87 N. J. L. 697.

Respondent relies upon the case of Stephen v. Camden and Philadelphia Soap Co., 75 N. J. L. 648, as authority for the claim that the contract now under consideration was abandoned, and that the rule of reasonable value for the services should be applied. There is no doubt that the plaintiff should have the reasonable value of his services, but the question is, how is that reasonable value to be ascertained? Is it to be ascertained by inquiry with respect to the usual and customary rate of compensation, in the absence of special contract, or are we to look to the contract itself as determinative of the rate of compensation? This question is not answered by the case cited. An examination of that decision fails to disclose how much the plaintiff recovered or on what basis. The errors assigned were that the court below should have construed the contract so as to relieve the defendant from liability and erred in refusing to grant a nonsuit, or, if not, then to direct a verdict in its favor. These were the only two questions considered. In deciding them the court had occasion to quote from authorities which, in laying down the rule that plaintiff was entitled to recover something for his services, also discussed the question whether the price fixed by the contract, if any, should be made the conclusive test of the value of the services rendered, or the real value of the services, though in excess of the contract price; but this court

did not decide the question in that case, because it was not raised. The opinion concluded, however, by citing the cases of *Kehoe* v. *Rutherford, supra,* and *Ryan* v. *Remmey,* 57 *N. J. L.* 474, in both of which the amount of recovery for work done under an uncompleted contract, terminated by the wrongful act of the defendant, was predicated upon the contract price.

We are unable to see that the circumstances of this case prevent the application of the rule laid down in Kehoe *v.* Rutherford and Wilson *v.* Borden, or that there was any question for the jury as to whether the written contract between the parties applied. There was no fraud in its making, as the court itself expressly charged; its consideration was adequate, and there being nothing to vitiate it, it stood as the agreement of the parties. It was, therefore, error for the trial court to permit the jury to pass on the question whether this contract was controlling, and for this error the judgment must be reversed, to the end that a *venire de novo* issue.

*For affirmance—*None.

*For reversal—*The Chancellor, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, White, Heppenheimer, Williams, Taylor, Gardner, JJ. 14.